IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 3:24-cv-01040-MR

| | |
|---|---|
| SHEENA BELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FRANK J. BISIGNANO, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's appeal of the Commissioner's decision denying her benefits. The parties have fully briefed the issues. [Docs. 6, 8, 9].

I. **BACKGROUND**

On August 29, 2022, Sheena Bell (the "Plaintiff") applied for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of September 1, 2021. [Transcript ("T.") at 519]. The Plaintiff's request was initially denied on March 1, 2023, and upon reconsideration on September 12, 2023. [Id.]. At the Plaintiff's request, a hearing was held on April 10, 2024 before an Administrative Law Judge ("ALJ"). [Id.]. On May 22, 2024, the ALJ issued a written decision denying

the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of September 1, 2021. [Id. at 527]. On September 26, 2024, the Appeals Council denied the Plaintiff's request for review. [Id. at 1-3]. The Plaintiff then filed a Complaint in this Court. [Doc. 1].

The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation modified). "It consists of more than a mere scintilla of evidence but

may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (citation modified). Rather, "where conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (citation modified). To enable judicial review for substantial evidence, the "record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation modified). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanation." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Act, as relevant here, is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (quoting 20 C.F.R. § 416.920). If not, the case progresses to step two, when the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work

4

activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. § 416.945.

At step four, the claimant must show that her limitations prevent her from performing her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform her past work, then she is not disabled. 20 C.F.R. §§ 404.1520, 416.920. Otherwise, the case progresses to the fifth step and the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative

work which exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 1, 2021. [T. at 521]. At step two, the ALJ found that the Plaintiff had the following severe impairments: benign neoplasm of the pituitary gland and lumbar dysfunction. [Id.]. At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 524]. The ALJ then determined that the Plaintiff's RFC, notwithstanding her impairments, allowed her to

> perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally crouch, crawl, balance, and stoop; must avoid concentrated exposure to loud noise levels; is able to work with levels of illumination

> similar to that found in a typical office setting (but may not work in direct sunlight); and must avoid all exposure to hazardous machinery and unprotected heights.

[Id.].

At step four, the ALJ found that the Plaintiff was able to perform past relevant work as a Customer Service Clerk. [Id. at 527]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Act from the alleged onset date, September 1, 2021, through the date of the decision, May 22, 2024. [Id.].

## V. DISCUSSION[1]

In this appeal, one of the Plaintiff's contentions is that the ALJ failed to properly discuss and evaluate the evidence related to the Plaintiff's mental limitations, and that the ALJ failed to explain how he accounted for the mental limitations in the Plaintiff's RFC. [See Doc. 6 at 13]. This incomplete analysis, the Plaintiff contends, led to an incomplete and inaccurate assessment of her abilities and resulted in an unsubstantiated RFC. [Id.].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio, 780 F.3d at 636-37 (finding that remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record).

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations require an in-depth review and analysis of the plaintiff's mental health history. The mechanism for this type of review and documentation, known as the "special technique," assists ALJs in assessing a claimant's mental RFC. 20 C.F.R. §§ 404.1520a, 416.920a.

The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p. Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945(b)-(d).

8

how a claimant's mental disorder limits her functioning. These criteria represent the areas of mental functioning a person uses in the performance of gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The criteria are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. The ALJ uses the special technique to "evaluate the severity of mental impairments . . . when Part A of the Listing of Impairments is used." 20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings.

20 C.F.R. § 404.1520a(b)(1). For mental health issues, the determination of mental RFC is crucial to the evaluation of a claimant's substantial gainful activity when the impairment does not match the criteria of the Listings. The RFC assessment is formulated in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2

9

> and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p further explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ found at step two that the Plaintiff suffers from mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentration, persistence, or pace; and no limitation in adapting or managing oneself. [Id. at 523]. These findings indicate that there are limitations on the Plaintiff's ability to carry out the areas of mental functioning listed in paragraph B. The

10

ALJ then made clear that these identified limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a *more detailed assessment*." [Id. at 523-24 (emphasis added)].

But when formulating the RFC, instead of engaging in "a more detailed assessment," the ALJ failed to explain how the RFC accounted for the Plaintiff's mental limitations. While acknowledging that two psychiatrists had opined that the Plaintiff had "mild mental limitations," the ALJ went on to conclude that the Plaintiff possessed "normal cognition, insight, and judgment," as well as "normal attention and thought content and [cooperation]." [Id. at 526]. Other than a conclusory reference to the "overall record" [id.], the ALJ failed to point to any specific evidence for this conclusion. A "proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). Because the ALJ did not logically explain why the Plaintiff's mild limitations in mental functioning did not require any RFC restrictions, this case must be remanded.

A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation modified). Because the ALJ neglected this duty here, this case must be remanded.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ must perform a function-by-function analysis of the Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189. The ALJ's analysis should include a narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, accounting for the Plaintiff's limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence or pace; and adapting or managing oneself, if any, including an assessment of whether the Plaintiff can perform work-related tasks for a full work day. See Scruggs v. Colvin, No. 3:14-cv-00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (applying

Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect his ability to perform work-related functions, but also his ability to perform them for a full workday).

In light of this decision, the Plaintiff's other assignments of error need not be addressed at this time but may be addressed by her on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that, pursuant to the power of this Court to enter judgment affirming, modifying, or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED,** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Signed: January 13, 2026

Martin Reidinger
Chief United States District Judge